**RIP-IT HOLDINGS, LLC, and**
**CLEARVIEW SYSTEMS, INC. d/b/a RIP-**
**IT SPORTING GOODS,**

         **Plaintiffs,**

**-vs-**                                        **Case No. 6:11-cv-1733-Orl-28GJK**

**WILSON HUNT INTERNATIONAL, LTD,**
**d/b/a CHAMPRO SPORTS,**

         **Defendant.**

## ORDER

This patent infringement controversy centers around United States Patent No. D603,102 ("the '102 Patent"), a design patent for a fielders' face mask to be used by softball and baseball players to protect their faces from being hit by a ball. Plaintiffs manufacture and distribute a variety of sporting goods and equipment throughout the United States and have an exclusive license to make, use, sell, offer for sale, and import into the United States the commercial embodiment of the design claimed in the '102 Patent. Plaintiffs assert that Defendant, Champro Sports ("Champro"), infringed the '102 Patent by selling, offering for sale, and marketing two face masks that utilize designs similar to the one claimed in the '102 Patent.

This case is now before the Court on Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 3) and Defendant's Response thereto (Doc. 21). Oral argument was heard on December 12, 2011. As discussed below, Plaintiffs' motion shall be denied.

# I. The '102 Patent

The '102 Patent issued on October 27, 2009. It claims "[t]he ornamental design for a protective fielders face guard for softball and baseball, as shown and described." ('102 Patent, Ex. C to Doc. 3). The '102 Patent then includes the following six drawings:



# II. Preliminary Injunction Standard

"A district court may enter a preliminary injunction based on its consideration of four factors: (1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1298 (Fed. Cir. 2009) (quotation omitted). However, in a patent case "a movant cannot be granted a preliminary injunction

unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis in original).

To establish a substantial likelihood of success on the merits, Plaintiffs must show, "in light of the presumptions and burdens that will inhere at trial on the merits," that (1) Plaintiffs will likely prove that Champro infringed the '102 Patent and (2) Plaintiffs' "infringement claim will likely withstand [Champro's] challenges to the validity" of the '102 Patent. Id.; PHG Techs., LLC v. St. John Cos., 469 F.3d 1361, 1365 (Fed. Cir. 2006). Furthermore, "in order to defeat the injunction on grounds of potential invalidity, [Champro], as the party bearing the burden of proof on the issue at trial, must establish a substantial question of invalidity." PHG, 469 F.3d at 1365. In other words, if Champro asserts an "invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." Amazon.com, 239 F.3d at 1350-51.

## **III. Analysis**

Although Plaintiffs assert that they have established all of the preliminary injunction factors, Champro has raised a substantial question of invalidity and Plaintiffs have failed to show that the question lacks substantial merit.

As noted above, the '102 Patent is a design patent. "Under 35 U.S.C. § 171 [], a design patent may be granted only for a 'new, original and ornamental design.'" Power Controls Corp. v. Hybrinetics, Inc., 806 F.2d 234, 238 (Fed. Cir. 1986). Once a patent issues, it is presumed valid, 35 U.S.C. § 282, but this presumption can be overcome if the challenger establishes that "the patented design is primarily functional rather than

ornamental," Power Controls, 806 F.2d at 238. "The design of a useful article is deemed to be functional when 'the appearance of the claimed design is dictated by the use or purpose of the article.'" PHG, 469 F.3d at 1366 (quoting L.A. Gear Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed. Cir. 1993)). At trial the challenger must establish invalidity by clear and convincing evidence. Amazon.com, 239 F.3d at 1358. "In resisting a preliminary injunction, however, one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." Id. at 1359.

Factors to consider when determining whether the claimed design is dictated by the use or purpose of the article include: (1) "whether the advertising touts particular features of the design as having specific utility"; (2) "[t]he presence of alternative designs" and "whether [those] designs would adversely affect the utility of the specified article"; (3) "whether there are any elements in the design or an overall appearance clearly not dictated by function"; (4) "whether there are any concomitant utility patents"; and (5) "whether the protected design represents the best design." Berry Sterling Corp. v. Pescor Plastics, Inc., 122 F.3d 1452, 1456 (Fed. Cir. 1997); see also PHG, 469 F.3d at 1366-67.

As a preliminary matter, the parties appear to disagree over what, exactly, constitutes the "use or purpose" of the face mask. Both parties acknowledge that its basic purpose is to protect baseball and softball players' faces. However, Plaintiffs attempt to characterize protection as the mask's only utility, while Champro argues that the purpose of the mask is to protect while also being lightweight and providing a wide field of vision, enabling the player

to have maximum mobility and comfort and to see the ball at all times. Plaintiffs' own advertisements undermine their characterization and support Champro's argument.

Plaintiffs' website promotes its face mask by claiming that their face mask "does not hinder your ability to see the ball" and it "allows for more than 180 degrees of vision so your peripheral vision is never compromised." (Ex. A to Decl. of John P. Fredrickson, Doc. 21-2). Plaintiffs' website also advertises that their mask "has a clutter free design that makes seeing the ball to your glove easy and flawless." (Id.). Additionally, the description of Plaintiffs' mask on Amazon.com notes that it "provides maximum protect[ion] and comfort with the largest viewable area" and that it has a "[l]ightweight design." (Ex. B to Fredrickson Decl.). Indeed, Plaintiffs do not deny that these elements are part of the utility of their mask; rather, Plaintiffs merely frame their arguments as though the only purpose to be considered is the mask's ability to protect the face.

Furthermore, review of relevant caselaw reveals that courts do not frame the purpose of a design so narrowly. See, e.g., PHG, 469 F.3d at 1367 (considering the arrangement of labels on a medical label sheet as a utility of the sheet because such placement was most convenient); Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1378-79 (Fed. Cir. 2002) (considering a large field of view as a part of an oval-shaped bus mirror's purpose); Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc., 4 F. App'x 922, 924 (Fed. Cir. 2001) (considering that the proposed alternative designs would cost significantly more than the patented design in determining that the proposed designs were not true alternatives).

In light of this broader purpose, Champro asserts that alternative designs would adversely affect the utility of Plaintiffs' face mask. In support, Champro cites PHG

Technologies. In PHG, the Federal Circuit vacated the district court's grant of a preliminary injunction because the defendants had presented a substantial question of invalidity. 469 F.3d at 1363. The patents at issue in PHG were design patents for identical medical label sheets–the only difference between the two was that one of the patents encompassed the border of the sheet containing hole punches. Id. After engaging in a "full inquiry" into proposed alternatives, the Federal Circuit determined that those alternative designs would adversely affect the utility of the sheets. Id. at 1367. In coming to this decision, the PHG court relied on the defendants' evidence that "the overall arrangement of the labels on the medical label sheet was dictated by the use and purpose." Id. Specifically, "[t]he labels for use on the wristbands [were] located on the bottom two rows of the sheet" because they are "usually the first labels used when a patient is admitted to a medical facility"; also, such placement is "the easiest location for a right-handed user to remove the label." Id. Additionally, "once the location of the wristband-sized labels [had] been dictated by the use and purpose of the medical label sheet, the location of the remaining labels [was] necessarily dictated as well. . . . because the remaining labels, as well as the medical label sheet itself, [we]re of standard size." Id. at 1368. The court also noted that the plaintiff failed to offer anything to refute the defendant's evidence. Id.

Champro asserts that like the medical label sheet in PHG, individual elements of Plaintiffs' face mask are dictated by its use and purpose and that the placement of those elements necessarily dictates the overall design. Champro presented the affidavit of Ryan W. Hunt–Champro's marketing director–explaining the functional considerations that dictated the design of Champro's face mask. (Ex. 1 to Doc. 21). The elements discussed by Mr.

Hunt are virtually identical to those elements contained in Plaintiffs' design, and according to his affidavit, every substantial element of the mask is dictated by function, which in turn dictates the overall design of the mask. Also, like the Plaintiffs in PHG, Plaintiffs here do not offer any evidence refuting Mr. Hunt's affidavit. Instead, Plaintiffs counter that Champro's analysis improperly looks at the functionality of the individual elements of the mask rather than the overall design. Plaintiffs cite Good Sportsman Marketing LLC v. Li & Fung Ltd., No. 6:07-cv-395, 2010 WL 2640385 (E.D. Tex. June 29, 2010), in support. Good Sportsman, however, does not address invalidity. The issue in Good Sportsman was the claim construction of a valid design patent that contained both functional and ornamental elements. Id. at *2.

Nevertheless, Plaintiffs' general statement of the law is correct: "the relevant inquiry with respect to a design patent is the overall appearance of the design." PHG, 469 F.3d at 1368 n.2. However, the Federal Circuit has also recognized that "[i]n determining whether a design is primarily functional, the purposes of the particular elements of the design necessarily must be considered." Power Controls, 806 F.2d at 240; PHG, 469 F.3d at 1368 n.2 ("[T]his court invariably also considers whether the elements of the design are themselves dictated by the purpose or use of the article of manufacture."). The mere fact that each element of a design serves some functional purpose does not necessarily mean that the overall design is dictated by function, see L.A. Gear, 988 F.2d at 1123, but when the function of each element cannot be separated from the overall design, it indicates that the entire design is dictated by function, see PHG, 469 F.3d at 1368.

Plaintiffs next claim that the principle underlying Champro's invalidity argument was rejected in Apple, Inc. v. Samsung Electronics Co., No. 11-CV-01846-LHK, 2011 U.S. Dist. LEXIS 139049 (N.D. Cal. Dec. 2, 2011), and urge this Court to follow suit. The pertinent patents at issue in Apple, Inc. were design patents for Apple's smartphones, which Apple alleged were infringed by Samsung's similar smartphones. Id. at *21. Apple sought a preliminary injunction, and Samsung challenged the validity of Apple's patent. Id. at *24. Samsung argued that Apple's design was "minimalistic" and therefore the "ornamentation [was] stripped down to pure functionality." Id. at 26. The Apple, Inc. court rejected Samsung's argument because it did not address the correct standard and noted that just because a design is minimalistic does not necessarily mean that it is purely functional; the full "dictated by" inquiry must be undertaken. Id. at 27. Plaintiffs assert that Champro's arguments are the same as Samsung's–that because Plaintiffs' mask is minimalistic it is necessarily purely functional. This mischaracterizes Champro's argument, which is that part of the function of Plaintiffs' mask is that it has minimal material blocking the player's vision–not that a minimalistic design is necessarily purely functional.

Plaintiffs next assert that the prior art examined during the patent prosecution constitutes viable alternatives to their face mask that do not adversely affect the utility of the mask. (See Ex. G to Doc. 3). While Plaintiffs are correct that many different samples of prior art were considered during the patent prosecution, none of the prior art appears to serve the same function as Plaintiffs' mask. (See id.). The prior art examples all appear to be bulky and cumbersome and unable to serve the utility of a lightweight face mask with a

wide field of vision. (See id.). Accordingly, these proposed alternative designs do not appear to be true alternatives.

Finally, it is also worth noting that Plaintiffs have a pending concomitant utility patent claiming "[a] method and device of a plate for providing a surface for attachment of a chin pad on a baseball or softball fielders face." (Ex. C to Fredrickson Decl., Doc. 21-2). The image contained in the application is the same as Figure 1 of the '102 Patent, but it highlights the chin pad attachment. (Id.).

As the previous discussion explains, Champro has presented a substantial question of invalidity, and Plaintiffs have failed to prove that the question lacks substantial merit. Accordingly, Plaintiffs have failed to show a likelihood of success on the merits, and therefore this Court cannot grant Plaintiffs' request for injunctive relief.

In accordance with the foregoing, Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 3) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 13th day of January, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party